1

2

3 *E-filed*:  8/30/06

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                        SAN JOSE DIVISION

11

12   EUGENE BATCHELDER et al,                  | No. C-71-2017 RMW

13            Plaintiffs,                        ORDER ON THE AMENDED
                                                 DISCIPLINARY PROCEDURES DECREE'S
14        v.                                     WRITTEN STATEMENT REQUIREMENT
                                                 AND REMEDY FOR CONTEMPT
15   JAMES M. GEARY,
                                                 **[Re Docket Nos. 365, 366, 383]**
16            Defendant.

17

18        On November 14, 2005 this court terminated the Amended Disciplinary Procedures Decree

19   to the extent it required prison officials to (1) give prisoners twenty-four hour written notice of

20   disciplinary hearings and (2) permit prisoners to present evidence and call witnesses during such

21   hearings.[1]  However, the court could not determine whether the Decree remained necessary to ensure

22   that officials provided "a written statement of the factfinders as to the evidence relied upon and the

23   reasons for the disciplinary action taken." *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

24   Although the prisoners claimed that seventy-five percent of the County's hearing records contained

25   no such rationale, they apparently failed to account for the fact that not all prisoners are entitled to

26   *Wolff* protection. *See* November 14 Order at 41:17-20 ("Subsequent cases have made clear that

27   _____

28       [1]The termination of the Decree, of course, does not affect the County's constitutional
     obligation to comply with the requirements of due process.

ORDER ON THE AMENDED DISCIPLINARY PROCEDURES DECREE'S WRITTEN STATEMENT REQUIREMENT AND
REMEDY FOR CONTEMPT—C-71-2017 RMW
DOH

1   [*Wolff*] appl[ies] to (1) all pretrial detainees, *see Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir.

2   1996), and (2) convicted prisoners whose potential punishments constitute 'atypical, significant

3   deprivation.' *Sandin v. Conner*, 515 U.S. 472, 486 (1995)").  The court ordered the prisoners to

4   show the County the records from which they derived their calculations.  It asked the County to tell

5   the court if it disputed the prisoners' analysis.  It also ordered the parties to discuss a remedy for the

6   County's contempt of the Access to the Courts Decree.  On December 6, 2005 the County informed

7   the court that it believed that the prisoners' calculations were inaccurate.  The parties' meet and

8   confer efforts were unsuccessful.  On January 4, 2006 the court ordered the parties to submit

9   proposals on outstanding issues by January 27, 2006.  The court has now considered these

10  submissions.[2]  For the reasons set forth below, the court holds that the County has failed to carry its

11  burden of demonstrating that the court should terminate the Amended Disciplinary Procedures

12  Decree's written statement requirement.  However, the court chooses not to order relief that exceeds

13  the constitutional minimum and will permit the County to move to terminate the Decree in one year.

14  The court also holds that the prisoners' attorneys may be entitled to recover their reasonable fees as a

15  remedy for the County's contempt.

16  **A.      The Amended Disciplinary Procedures Decree**

17      As mentioned in the November 14 Order, the County bears the burden of demonstrating that

18  the Amended Disciplinary Procedures Decree's written statement requirement is no longer necessary

19  to correct a "current and ongoing" constitutional violation.  *See* November 14 Order at 18:13-15.

20  Both parties have submitted hundreds of hearing records and competing proposed methods for

21  determining the County's compliance.

22  **1.      The County's Methodology and Conclusions**

23      The County first selected all hearings that occurred between April 15, 2004 and April 15,

24  2005.  Harris Decl. Supp. County's Proposal ("Harris Decl.") ¶ 10.  The County then eliminated

25  records that pertained to inmates (1) who the panel found not guilty or (2) who did not fall within

26

27      [2] The prisoners have filed *ex parte* applications to file responses to the County's
    submissions.  Much of the prisoners' proposed submissions merely rehashes earlier arguments.  The
28  court denies the prisoners' motion.

ORDER ON THE AMENDED DISCIPLINARY PROCEDURES DECREE'S WRITTEN STATEMENT REQUIREMENT AND
REMEDY FOR CONTEMPT—C-71-2017 RMW
DOH                                                    2

1  *Wolff* because they were sentenced at the time of the hearing and received minor punishment for

2  their disciplinary violation.  *Id*.  It also flagged "unsentenced inmates who [it] submits were not

3  entitled to *Wolff* protections because the nature of the discipline was so minor (warning, loss of a

4  visit, loss of commissary, etc.)" with the designation "ID."  *Id*.  Resolving all disputed "ID"-

5  designated hearings in the prisoners' favor, the County determined that 61 of the 72 hearings — or

6  85% — were constitutional.  *Id*.  Resolving all "ID" hearings in the County's favor revealed that 67

7  of the 72 hearings — or 93% — were constitutional.  *Id*.

8      There are two problems with the County's analysis.  For one, it does not account for the

9  sufficiency of the written statement of decision.  *Wolff* explained that the written statement

10  requirement ensures transparency and accountability in disciplinary hearings:

11  > Written records of proceedings will thus protect the inmate against collateral
   > consequences based on a misunderstanding of the nature of the original proceeding.
12  > Further, as to the disciplinary action itself, the provision for a written record helps
   > to insure that administrators, faced with possible scrutiny by state officials and the
13  > public, and perhaps even the courts, where fundamental constitutional rights may
   > have been abridged, will act fairly. Without written records, the inmate will be at a
14  > severe disadvantage in propounding his own cause to or defending himself from
   > others.

15
16  *Wolff*, 418 U.S. at 565.  In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), the Supreme Court held

17  that a prison's disciplinary board's decision comports with the Due Process Clause if "some evidence

18  supports [it]."  Courts generally find decisions that provide some basis for deducing the panel's

19  reasoning to be constitutional.  *See Saenz v. Young*, 811 F.2d 1172, 1174-76 (7th Cir. 1987)

20  ("Officer Fabry's written statement supports the finding of guilt."); *Pardo v. Hosier*, 946 F.2d 1278,

21  1284-85 (7th Cir. 1991) ("resident's statements and officer's report"); *Brown v. Frey*, 807 F.2d 1407,

22  1410-14 (8th Cir. 1986) ("(1) Relied on CV & additional report; (2) No CV's for past nine months;

23  (3) Relied on # 5 definition").  Nevertheless, wholly conclusory decisions are inadequate:

24  > The line between constitutional adequacy and inadequacy is a fine, but important
   > one. When the Committee writes 'based on all available evidence the resident is
   > guilty,' no agency or court can discern the basis for the Committee's rulings.  If,
25  > however, the Committee writes 'resident is lying,' or 'the guard saw him therefore .
   > . .,' or 'resident admits he committed the act charged,' or 'resident does not refute
26  > charges,' or another statement establishing the evidence underlying its decision, then
   > the inmate is protected from a mischaracterization of the disciplinary action when it
27  > comes under review.

28

1  *Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir. 1984) (holding that numerous decisions stating

2  only that the board's rationale was "testimony" or "evidence" violated due process).

3      The court's review reveals that the vast majority of the County's selected decisions comport

4  with the Constitution.[3] *See, e.g.,* Bates Nos. MJ030379 ("[i]nmate refused to discuss the matter");

5  MJ030391 ("inmate admitted metal was in cell, could not justify it"); MJ030456 (inmate "refused to

6  attend hearing"); MJ03513 ("[t]est[imony] from inmate witness . . . confirmed that def. asked him to

7  test this PIN number"); MJ030538 ("[i]nmate offered no defense other than he didn't 'do it'; The

8  Board did not believe him."); MJ030585 ("[i]nmate stated he was defending himself"); MJ030607

9  ("[i]nmate's initial reaction to officer was disrespectful"); MJ030610 ("[i]nmate conceded guilt [and]

10  offered no testimony"); MJ030648 ("[i]nmate admits he called the inmate a 'bitch'"); MJ030663

11  ("[a]dmitted guilt"); MJ030675 ("the inmate acknowledged his guilt during his defense"); MJ030678

12  ("[i]nmate admitted to using PIN"); MJ030682 ("inmate admission during hearing"); MJ030814

13  ("Board did not believe the inmate plus inmate said that nightshift told him that he could not have

14  paper but did not know it applied during the dayshift"); ELM031067 ("admitted having paper

15  clips"); ELM031063 ("admitted guilt"); ELM031045 ("[i]nmate admitted to hiding medication [and]

16  kissing the other inmate but claimed it was a peck"); ELM031030 ("Board did not find testimony of

17  inmate   . . . to be credible").

18      Nevertheless, some decisions are confusing or offer little explanation.  *See, e.g.,* Bates Nos.

19  MJ030402 ("[t]he Board believes he had adequate notice and he was in possession of the

20  contraband"); MJ030447 ("[i]nmate testified he did not hear the officer"); MJ030499 ("[i]nmate

21  states he was not the first in the room, but he was moving towards his room"); ELM031099 ("Board

22  found guilty disobeying order but felt the disrespect was afterwards and not in conjunction w/

23  security search").  Several others state only that the Board "did not believe the inmate." *See, e.g.,*

24

25

26

---

27      [3]  Apparently, some records that the County claims were attached to as Exhibit C to the
Declaration of Kristine Pantiga and bear Bates Numbers below 030992 are actually contained in
28  Exhibit C to the Declaration of Joan Conner.

ORDER ON THE AMENDED DISCIPLINARY PROCEDURES DECREE'S WRITTEN STATEMENT REQUIREMENT AND REMEDY FOR CONTEMPT—C-71-2017 RMW
DOH                                              4

1   Bates Nos. MJ030374; MJ030467; MJ030527; MJ030799; MJ030806.[4]  A few are plainly

2   insufficient.  *See, e.g.,* MJ030486 ("testimony"); MJ030523 ("[t]estimony of witnesses").  This

3   suggests that the County's compliance rate is lower than it claims.

4        Compounding this problem is the fact that the court must resolve all six disputed records

5   marked as "ID" against the County.  These records reflect "*unsentenced* inmates" who the County

6   believes "were not entitled to *Wolff* protections because the nature of the discipline was so minor[.]"

7   Harris Decl. ¶ 10 (emphasis added).  Although *sentenced* inmates only receive Due Process

8   protections for hearings for infractions that carry consequences so serious that they exceed the

9   normal hardships of prison life, pre-trial detainees "may not be punished prior to an adjudication of

10  guilt in accordance with due process of law."  *Mitchell*, 75 F.3d at 524; *Sardin*, 515 U.S. at 485

11  (reasoning that punishing pre-trial detainees without due process "would improperly extend the

12  legitimate reasons for which such persons are detained — to ensure their presence at trial").

13  Therefore, the fact that some unsentenced inmates faced minor repercussions does not justify the

14  County's failure to provide a written statement of decision.  Because it appears that the County is

15  complying with *Wolff*'s written statement requirement only about 70 to 80 percent of the time, the

16  court declines to terminate the Amended Disciplinary Procedures Decree's written statement

17  requirement at this time.

18              **2.        The Prisoners' Methodology and Conclusions**

19       However, the prisoners fail to convince the court that it should order sweeping remedial

20  relief.  The prisoners conclude that, since 2002, the Main Jail's non-compliance rate has been 29.5%

21  and Elmwood's non-compliance rate has been 83.4%, for a combined non-compliance rate of 56.7%.

22  The prisoners base these calculations on "a) inmates who were sentenced at the time of their

23  disciplinary hearings and received loss of good time punishments as a result of the disciplinary

24  hearings, b) inmates who were unsentenced at the time of their disciplinary hearings, and c) inmates

25

26        [4] This may or may not be appropriate depending on the claimed infraction.  *See Culbert v.
    Young*, 834 F.2d 624, 630-31 (7th Cir. 1987) ("[T]he teaching of both *Wolff* and *Hill* [is] that the
27  kind of statements that will satisfy the constitutional minimum will vary from case to case
    depending on the severity of the charges and the complexity of the factual circumstances and proof
28  offered by both sides.").

ORDER ON THE AMENDED DISCIPLINARY PROCEDURES DECREE'S WRITTEN STATEMENT REQUIREMENT AND
REMEDY FOR CONTEMPT—C-71-2017 RMW
DOH                                                 5

1  whose sentencing status is unknown to [prisoners]."  Junginger Decl. Supp. Pla.'s Proposal

2  ("Junginger Decl.") ¶ 3.  Once again, however, the prisoners have failed to account for the fact that

3  only pretrial detainees and convicted prisoners facing significant deprivations fall under *Wolff*.[5]

4  Because the prisoners' analysis includes "inmates whose sentencing status is unknown," it is

5  impossible to gauge the County's compliance.  For example, of the dozens of records that the

6  prisoners offer with respect to Elmwood, only seven include the inmate's sentencing status.  The

7  only group that the court can examine in detail is unsentenced prisoners at the Main Jail.  Under the

8  prisoners' own methodology, the lion's share of the decisions meet constitutional standards.  *See,*

9  *e.g.,* Bates Nos. C00769-71; C00814-18; C00819-25; C01009-13; C01149-53; C01257-60; C01278-

10  86; C01457-58; C01460-62; C01575-21; C01662-66; C01708-10; C01719-22; C01768-72; C01956-

11  59; C02053-57; C02205-07; C02302-03; C02340-43; C02448-54; C02461-68; C02480-84; C02504-

12  10; C2531-35; C02546-49; C02571-74; C02577-80; C02582-86; C02632-36; C02643-49; C02766-

13  73; C02789; C02836-40; C02862-64; C02871-74; C02899-902; C02920-23; C02933-38; C0293-43;

14  C02955-60; C02961-64; C02967-71; C03021-25; C03061-65; C03066-70; C03086-89; C03105-15;

15  C03116-19; C03121-25; C03152-56; C03161-66; C03190-95; C03290-94; C03353-62; C03388-96;

16  C03532-38; C03667-72; C03723-35; C03740-46; MJ30360-68; MJ30402-06; MJ30447-50.

17  Admittedly, some do not.  *See, e.g.,* Bates Nos. C00928-32; C00947-50; C01109-13; C01267-70

18  (decision stated only that "[b]ased upon facts in case, I found [inmate] guilty of Rule 2-19");

19  C01488-91; C01610-16; C01712-18; C01758-62; C01824-27; C01875-78; C01960-66; C02100-02;

20  C02150-53; C02281-88; C03485-89 (decision stated only that the "facts supported the allegation").

21  Nevertheless, the prisoners' submissions do not support their argument that the County's compliance

22  rate is less than fifty percent.

23       Another factor that cautions against ordering relief that exceeds the constitutional floor is

24  that the County's compliance has dramatically improved.  For instance, the prisoners claim that only

25  twelve out of the 112 inmates who attended hearings after July 2003 did not receive an adequate

26  statement of decision.  Notably, this figure includes *all* inmates: both those who were entitled to

27

28       [5]  The prisoners apparently did not realize this until January 18, 2006, when they asked the
County to provide them with "every inmate's in-custody status back to 2003."  Harris Decl. ¶ 8.

1    *Wolff* protections and those who were not.[6]  Because the PLRA requires courts to terminate consent

2    decrees unless the prisoners show a "*current and ongoing* violation of federal right," 18 U.S.C. §

3    3626(b)(3), the absence of evidence of recent constitutional violations suggests that widespread

4    relief would be over-broad.  *See Cason v. Seckinger*, 231 F.3d 777, 783 (11th Cir. 2000) (rejecting

5    argument that because "institutional policies that led to violations in the past are still in existence

6    and pose a danger that future violations will occur . . . the 'current and ongoing' violation standard is

7    met").  In addition, the Department of Corrections has voluntarily required "all administrative level

8    staff who have any involvement with the disciplinary hearing process to attend training."  Harris

9    Decl. ¶ 11.  Prison officials' voluntary efforts to ameliorate unconstitutional conditions can show that

10   court involvement is not necessary or should be limited.  *See Baker v. Haun*, 333 F. Supp. 2d 1162,

11   1165 (D. Utah 2004) (striking down consent decree where "no present unwillingness on the part of

12   the prison officials to comply with the 1992 injunction . . . has been shown").

13         Based upon the analysis above, the court leaves the Amended Disciplinary Procedures

14   Decree's written statement clause in effect, but permits the County to move to terminate the

15   remaining portion of the Decree (the written statement requirement) one year from the issuance of

16   this Order.

17         **B.      Remedy for Contempt**

18         The prisoners propose that the court order the County to pay $240,000 into a fund that they

19   shall use "to create and maintain . . . [a] core secondary law library accessible to *in pro per* inmates."

20   Pla.'s Proposal at 2:9-15.  According to the prisoners, this library should contain six specific

21   hornbooks.  In addition, the prisoners seek to use the funds to establish "[a] program to provide civil

22   legal assistance to inmates" and "[a] manual on how to conduct legal research, which the County

23   shall distribute to *in pro per* inmates."  The prisoners' attorneys seek their fees and costs.

24         The court denies the prisoners' request for library funds.  After terminating the Access to

25   Courts decree, it makes little sense for the court to permit the prisoners to saddle the County with the

26   burden of maintaining a law library, no matter how limited.  As discussed in the November 14

27   ────────────────────

28   [6] Based on the prisoners' analysis, only three unsentenced inmates did not receive adequate
     statements.

Order, a court should think carefully before substituting its judgment for that of prison officials. Because the County has chosen to close the law libraries due to security concerns in favor of a different program, the court elects not to second-guess this determination.

The court will, however, permit the prisoners to move for reasonable attorneys' fees. However, the court does so with the admonition that the prisoners' request must reflect (1) their limited success in this matter and (2) the fact that the prisoners' occasional oversights and inadvertent errors have consumed greater legal resources than might otherwise have been necessary. *See* November 14 Order at 44:3-44:25 (noting that the prisoners counted all infractions, even ones where the inmate admitted the charge against him, as indicative of whether the County had complied with *Wolff*'s twenty-four hour notice requirement); Harris Decl. ¶¶ 5-6 (noting that the prisoners' seventy-five percent non-compliance estimate on *Wolff*'s written statement requirement failed to (1) include approximately one hundred records, (2) exclude inmates who did not fall under *Wolff*, and (3) exclude records that pertained to hearings in which the panel found the inmate not guilty).

**C.   Order**

The Amended Disciplinary Procedures Decree is terminated except for the requirement that the prisoners be given a written statement by the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. The County may move to terminate the written statement requirement of the Decree in one year upon a showing that during that one year they are fully complying with the written statement requirement. The prisoners may move to seek recovery of their reasonable attorney's fees for bringing to the court's attention the County's failure to seek court approval before implementing a change to the Access to the Courts Decree and for their limited success in resisting the County's motion to fully terminate the Amended Disciplinary Procedures Decree.

DATED:      8/30/06

RONALD M. WHYTE
United States District Judge

1  **A copy of this order was mailed on _____ to:**

2  **Counsel for Plaintiff(s):**

3  James McManis
   Tara Kaushik
4  McMANIS, FAULKNER & MORGAN
   50 West San Fernando Street, 10th Floor
5  San Jose, CA 95113

6  James Zahradka
   Kyra Kazantzis
7  PUBLIC INTEREST LAW FIRM
   LAW FOUNDATION OF SILICON VALLEY
8  111 West Sant John Street, Suite 315
   San Jose, CA 95113

9
   **Counsel for Defendant(s):**
10
    Ann Miller Ravel
11  Stephen H. Schmid
    Aryn Harris
12  OFFICE OF THE COUNTY COUNSEL
    70 West Hedding St., East Wing, Ninth Floor
13  San Jose, CA 95110

14
    Counsel are responsible for distributing copies of this order to co-counsel, as necessary.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON THE AMENDED DISCIPLINARY PROCEDURES DECREE'S WRITTEN STATEMENT REQUIREMENT AND REMEDY FOR CONTEMPT—C-71-2017 RMW
DOH                                                              9