*E-filed on* 8/22/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EUGENE BATCHELDER, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES M. GEARY, ET AL.,<br><br>Defendants. | No. C-71-02017 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS<br><br>**[Re Docket Nos. 395, 396]** |

Plaintiffs move for attorney's fees and costs in this case. Defendant County of Santa Clara ("County") opposes the motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court grants in part and denies in part plaintiffs' motion for attorney's fees and costs.

## I. BACKGROUND

This action, involving the rights of inmates of the Santa Clara County jails, originally resulted in two consent decrees: (1) the Access to Courts Decree in 1973 and (2) the Disciplinary Procedures Decree in 1977. The Disciplinary Procedures Decree was later amended ("Amended Disciplinary Procedures Decree").

In May 2001 an inmate notified counsel for the prisoners, the Public Interest Law Firm ("PILF"), that the County was in contempt of the Access to Courts Decree. Decl. of James Zahradka Supp. Pls' Mot. Attorney's Fees ("Zahradka Decl."), ¶ 6. PILF began monitoring the County's compliance with the Decrees over the next two years. *Id.* ¶¶ 7-8. In June 2003 the County unilaterally closed its law libraries. *Id.* ¶ 6. Therefore, on August 12, 2004 counsel for plaintiff filed an application with this court for an Order to Show Cause as to the County's contempt of the Access to Courts Decree.

In September 2004 this court ordered defendants to appear and show cause why an order should not be made adjudging the Santa Clara County Department of Corrections and their officers, agents, servants, employees, *et al.*, in contempt for violating the Access to Courts Decree. Defendants were further ordered to show cause why they should not be required to pay to plaintiffs their reasonable expenses including attorney's fees that they would incur in obtaining any order of this court adjudging them in contempt.

On November 3, 2004 the County moved to terminate the two Consent Decrees. The parties then engaged in limited discovery to address the issues raised by the County's motion.

By order dated November 14, 2005, the court terminated the Access to Courts Decree as no longer necessary and the Amended Disciplinary Procedures Decree as no longer necessary except as to the County's obligation to provide a written statement of decision in certain disciplinary matters. Nov. 14, 2005 Order at 2. Specifically, the court could not determine whether the Decree remained necessary to ensure that officials provided "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." The court ordered the parties to meet and confer and submit a proposal for a continuing decree as to the written statement requirement as well as a proposal for a contempt remedy for the County's violation of the Access to Courts Decree prior to its termination. The parties filed supplemental briefings thereafter.

On August 30, 2006 this court issued an order leaving the Amended Disciplinary Procedures Decree's written statement clause in effect but permitting the County to move to terminate that remaining portion one year from the issuance of the August 30, 2006 Order upon a showing that during that year it fully complied with the written statement requirement. The court further ordered

that plaintiffs could move for recovery of their reasonable attorney's fees (1) for bringing to the court's attention the County's failure to seek court approval before implementing a change to the Access to Courts Decree and (2) for their limited success in resisting the County's motion to fully terminate the Amended Disciplinary Procedures Decree:

> The court will, however, permit the prisoners to move for reasonable attorneys' fees. However, the court does so with the admonition that the prisoners' request must reflect (1) their limited success in this matter and (2) the fact that the prisoners' occasional oversights and inadvertent errors have consumed greater legal resources than might otherwise have been necessary. *See* November 14 Order at 44:3-44:25 (noting that the prisoners counted all infractions, even ones where the inmate admitted the charge against him, as indicative of whether the County had complied with Wolff's twenty-four hour notice requirement); Harris Decl. ¶¶ 5-6 (noting that the prisoners' seventy-five percent non-compliance estimate on Wolff's written statement requirement failed to (1) include approximately one hundred records, (2) exclude inmates who did not fall under Wolff, and (3) exclude records that pertained to hearings in which the panel found the inmate not guilty).

Aug. 30, 2006 Order at 8:4-13. Plaintiffs' counsel now move for attorney's fees.

## II. THE PRISON LITIGATION REFORM ACT

Plaintiffs seek total attorney's fees of $363,876 and out-of-pocket costs of $18,076. Pls.' Mot. at 19.[1] These fees and costs are sought by PILF, who has been plaintiffs' designated counsel since the commencement of this action, and McManis, Faulkner & Morgan, who joined as co-counsel in 2004. The parties initially dispute the applicability of the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq.* ("PLRA"), and in particular the applicability of the PLRA's rate cap, to plaintiffs' attorney's fees request.

### A. Applicability of PLRA

As an initial matter, plaintiffs argue that the fee cap imposed by the PLRA does not apply to any of the fees incurred other than the fees incurred in monitoring whether the County was in compliance with the Consent Decrees. The PLRA provides in relevant part:

> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

42 U.S.C. § 1997e(d)(3). Plaintiffs concede that the PLRA rate cap applies to the fees incurred for the monitoring of whether the County was complying with the Consent Decrees. However, they

---

[1] Based on the court's calculation, the subtotals of plaintiffs' requested fees total $364,856.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS—No. C-71-02017 RMW
SPT                                    3

1  argue that the PLRA rate cap does not apply to the other fees incurred. First, plaintiffs contend that
2  the plain text of § 1997e(d)(1) indicates that the rate cap applies only to "any action brought by a
3  prisoner." Plaintiffs submit that the original "action" brought by the prisoners terminated decades
4  ago when the Consent Decrees issued and, therefore, the later termination motion constitutes an
5  "action" brought by the County. Second, as to work involved in opposing the County's motion to
6  terminate, plaintiffs argue that the legislative intent of the PLRA to curtail frivolous prisoners' suits
7  is not implicated by the issues raised in the motion to terminate. Third, as to the contempt motion,
8  plaintiffs argue that the PLRA is not applicable since that motion is grounded in this court's power to
9  address a party's contempt of its orders under 18 U.S.C. § 401. The court finds that plaintiffs'
10 arguments have some appeal but are contrary to existing authority.

11  In *Webb v. Ada County*, 285 F.3d 829 (9th Cir. 2002), the Ninth Circuit rejected essentially
12 the same arguments that plaintiffs make before this court. There, the prisoners' action resulted in a
13 partial consent decree. Post-judgment, Ada County filed a motion to terminate the partial consent
14 decree, which the prisoners' opposed. The court denied the motion to terminate the decree. *Id.* at
15 835. The prisoners also filed motions for contempt and for discovery pursuant to 18 U.S.C. § 401
16 and Fed. R. Civ. P. 37. The Ninth Circuit held that the fees incurred in opposing the motion to
17 terminate and filing the motions for contempt and for discovery, to the extent they were incurred
18 subsequent to the enactment of the PLRA, were subject to the PLRA rate cap.

19  As to the fees incurred to oppose the motion to terminate, the Ninth Circuit reasoned that,
20 although the motion was brought after the court had entered judgment on the action in the form of
21 the partial consent decree, "[t]he attorney's fees Webb requested for post-judgment work were
22 incurred in enforcing and monitoring the court's judgment and the consent decree, or were directly
23 related to the services performed in Webb's litigating requests for attorney's fees under the PLRA."
24 *Id.* at 835. The judgment and partial consent decree were issued to correct violations of Webb's
25 federal constitutional rights. *Id.* Therefore, the court concluded, the requested attorney's fees were

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS—No. C-71-02017 RMW
SPT                                                                 4

subject to the PLRA.[2] Here, similarly, plaintiffs' work in opposing the County's motion to terminate the Consent Decrees directly related to their efforts to enforce the court-ordered consent decrees in the underlying prisoners' action. Although counsel attempts to separate the County's motion to terminate from the underlying prisoners' suit for relief, *Webb* makes clear that the fact that the fees were incurred following a court-ordered consent decree does not render the fees outside the purview of the PLRA.[3] *See id.* at 838 ("The district court did not err in applying the PLRA rate cap to all fees, whether related to the merits or postjudgment monitoring, earned after the PLRA's effective date.").

The *Webb* court also concluded that Webb's motions for contempt and for discovery were subject to the PLRA rate cap. The district court awarded contempt and discovery sanctions. *Id.* at 837. As plaintiffs argue here, Webb argued that since the contempt and discovery sanctions were awarded pursuant to the court's authority under 18 U.S.C. § 401 and Fed. R. Civ. P. 37, the PLRA rate caps should not apply. The Ninth Circuit rejected the argument that the PLRA rate caps apply only to fees awarded under 42 U.S.C. § 1988.[4] *Id.* Rather, the court reasoned, based on the record the contempt and discovery motions were "directly related" to the plaintiff's underlying civil rights action and therefore within the scope of the PLRA. *Id.* The court further reasoned that its conclusion was supported by the policies and legislative intent behind the PLRA:

> The purpose of the PLRA "was apparently to curtail frivolous prisoners' suits and to minimize the costs—which are borne by taxpayers-associated with those suits." *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999). Given this purpose, it is unlikely that Congress intended that only part of the attorney's fees awarded in a prisoner lawsuit be subject to the PLRA rate cap. Congress' desire to reduce the costs of these lawsuits would not be furthered by awarding attorney's fees piecemeal; Webb's interpretation of the PLRA's scope would increase litigation over which fees should be paid at which rate.

---

[2] Although *Webb* involved the question of whether the requested fees were compensable under the PLRA, the Ninth Circuit's conclusion that the fees were reimbursable pursuant to the PLRA in effect means that the PLRA's rate cap was applicable to said fees.

[3] To the extent counsel contends that their request for attorney's fees for time incurred opposing the County's motion to terminate is not within the scope of the PLRA, and therefore, not subject to the PLRA rates, the basis for its request for fees is unclear.

[4] Section 1997e(d)(1) provides in relevant part: "In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded . . . ."

*Id.*

Finally, although plaintiffs argue that *Webb* was incorrectly decided, plaintiffs offer no support for their contention other than that the *Webb* court reached its conclusions simply because it utilized a deferential standard of review. However, as explained above, the *Webb* court's conclusions are supported by reasoned considerations of the PLRA's purposes and the substance of the underlying work for which attorney's fees were requested. Plaintiffs offer nothing that meaningfully distinguishes the *Webb* court's reasoning and holdings.[5] Accordingly, the court finds that the PLRA rate cap applies to plaintiffs' fee request.

### B. Applicable PLRA Rate

Next, the parties dispute the appropriate PLRA rate cap for the requested fees. The County argues that the proper fee is the PLRA rate cap based on the amounts actually appropriated by Congress and paid to court-appointed counsel under § 3006A. The County further argues that the applicable rate is the rate in effect for each of the years fees were incurred rather than the current rate. Thus, the County's proposed rates are $75 per hour prior to May 1, 2002, $90 per hour between May 1, 2002 and December 31, 2005, $92 per hour from January 1, 2006 to April 30, 2007, and $94 per hour as of May 1, 2007. Decl. of Steve Schmid Opp'n Pls.' Mot., ¶¶ 2-3; Ex. A. The County proposes using a "blended rate" of $90 based on the various rates in effect for the applicable years. Applying the 150% multiplier, the County proposes a rate of $135. Plaintiffs argue that the proper rate is the current rate and that the current rate is $113 per hour based on the rate set by the Judicial Conference on September 19, 2002 even though court-appointed counsel do not actually receive such a rate. Thus, applying the 150% multiplier, plaintiffs propose a rate of $170.

The courts that have addressed the proper rate to apply for the PLRA rate cap essentially are split on the issue. In *Webb*, the Ninth Circuit appeared to support using the rate approved by the

---

[5] Plaintiffs also suggest that this court apply the approach in *Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003) rather than adhere to *Webb*. In *Armstrong*, the Ninth Circuit concluded that the PLRA did not limit the award of attorney's fees to the prevailing plaintiff's claims under the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973. However, the *Armstrong* court's holding is premised on its conclusion that there existed a separate statutory basis for awarding attorney's fees. Here, the court finds *Webb* to be more on point than *Armstrong*, and declines plaintiffs' suggestion that the court adopt the *Armstrong* holding rather than the holdings in *Webb*.

Judiciary Conference regardless of the rates actually paid to court-appointed CJA counsel. *See Webb*, 285 F.3d at 839 (rejecting plaintiff's argument that payment to PLRA counsel is necessarily linked to amount actually paid to CJA counsel based on text of PLRA); *see also Madrid v. Gomez*, 150 F.3d 1030, 1034 (9th Cir. 1998) (noting that the appropriate rate is the rate provided by the Judicial Conference for the Northern District of California). The Sixth Circuit reached the same conclusion based on its consideration of the plain text of § 1997e(d) and § 3006A. *See Hadix v. Johnson*, 398 F.3d 863, 867 (6th Cir. 2005) (holding that attorney's fees under the PLRA should be based on the hourly rate authorized by the Judicial Conference, rather than the rate actually paid to court-appointed counsel). On the other hand, other courts appear to have used the rates actually paid to court-appointed counsel based on funds appropriated by Congress for each relevant period. *See e.g., Hernandez v. Kalinowski*, 146 F.3d 196, 201 (3d Cir. 1998) (declining to use the rates authorized by the Judicial Conference but not implemented due to budgetary constraints); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1282 (D. Wyo. 2004) (using the rates actually implemented); *Morrison v. Davis*, 195 F. Supp. 2d 1019 (S.D. Ohio 2001) (same); *see also Johnson v. Daley*, 339 F.3d 582, 584 n.† (7th Cir. 2003) (using the CJA funded rate for exposition purposes, though not expressing any view on whether it is the right cap).

Although the Ninth Circuit's decision in *Webb* issued prior to the September 2002 rate increase approved by the Judicial Conference, the Sixth Circuit's decision in *Hadix* considered and accepted the propriety of using the rates approved at the September 2002 conference. Moreover, the Sixth Circuit's reasoning is sound. It reasoned that the approved rate is appropriate as the plain text of § 3006A authorizes the Judicial Conference "to establish reasonable rates of compensation for court-appointed counsel limited only by prevailing hourly rates, the recommendations of the judicial councils of the circuits, and adjustments tied to the General Schedule." *Hadix*, 398 F.3d at 867. The statute makes no reference to limitations based on congressional appropriations or rates of compensation actually paid to court-appointed counsel. *Id.* Moreover, attorney's fee awards in PLRA cases are paid from the pockets of unsuccessful defendants, not from funds set aside by Congress to compensate court-appointed counsel. *Id.* Finally, the legislative concern about high costs of prisoner civil rights litigation is met by tying the PLRA rate to the reasonable market rate as

determined by the Judicial Conference. *Id.* at 866. There is no indication that Congress intended to control such costs by tying PLRA attorney's fees to congressional appropriations for court-appointed CJA counsel. *Id.* at 867. Therefore, the court finds it appropriate to utilize the rate authorized by the Judicial Conference.

Finally, the parties dispute whether to use the current rate or the rate in effect at the time the fees were incurred. In the context of PLRA litigation, it appears that the majority of courts use the rate in effect at the time the fees were incurred. In addressing the appropriate PLRA rate to use, the Ninth Circuit stated, "[a]t the time Webb's attorneys *earned* their postjudgment fees, the Judicial Conference had approved that a rate of $75 per hour was justified for all district courts except for the District of Rhode Island." 285 F.3d at 839 (emphasis added). Thus, the Ninth Circuit has applied the PLRA rate in effect at the time the fees are earned. In any event, as a practical matter, the proper baseline rate in this case is $113 as almost all of plaintiffs' fees were incurred after October 1, 2001 at which time the 2002 fiscal year rate of $113 per hour authorized by the Judicial Conference became effective.

### III.  FEE REQUEST

According to plaintiffs' motion, plaintiffs seek attorney's fees for five separate categories of work performed: (1) efforts in monitoring whether the County was in compliance with the Consent Decrees; (2) efforts in filing and litigating the contempt motion; (3) efforts in opposing the County's motion to terminate the Consent Decrees; (4) tasks related to both Consent Decrees and the litigation as a whole; and (5) time spent preparing the present motion for attorney's fees. The PLRA provides in relevant part:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--
>
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS—No. C-71-02017 RMW
SPT                                                               8

42 U.S.C. § 1997e(d)(1).

Here, it is not disputed that plaintiffs ultimately prevailed in the above action when the Consent Decrees were issued in 1973 and 1977. The present attorney's fee motion does not relate to the efforts leading to the prisoners' securing of the Consent Decrees. Rather, the present fee request relates to efforts in monitoring the County's compliance with the Consent Decrees, filing a contempt motion, and opposing the County's motion to terminate the Consent Decrees. In its August 30, 2006 Order, the court ordered that plaintiffs could move for recovery of their reasonable attorney's fees (1) for bringing to the court's attention the County's failure to seek court approval before implementing a change to the Access to Courts Decree and (2) for their limited success in resisting the County's motion to fully terminate the Amended Disciplinary Procedures Decree.

### A.  Efforts Monitoring County

Plaintiffs seek fees for time spent by PILF between July 2001 and September 2003 monitoring the County's compliance with the terms of the Consent Decrees then in effect. According to PILF's written declaration and supporting listing of hours, it spent 48.60 hours associated with its monitoring efforts, including meeting with County officials and staff, drafting letters and emails to the County, meetings among attorneys, and communicating with opposing counsel. Efforts monitoring compliance with a consent decree may be reimbursable under the PLRA. *See Martin v. Hadix*, 527 U.S. 343, 361-62 (1999) (holding that the PLRA rate cap applies to postjudgment monitoring); *Webb*, 285 F.3d at 837-38 (finding that the district court's award of monitoring fees were within the purview of the PLRA). The County does not contest plaintiffs' request for fees associated with their monitoring effort. Although the first indication of the County's potential non-compliance resulted from an inmate informing PILF of such potential non-compliance rather than from PILF's own efforts, the court nevertheless finds that the monitoring efforts was reasonably incurred in efforts to enforce the terms of the Consent Decrees then in effect and to bring to the court's attention the extent of the County's potential non-compliance. Further, after review of the time records submitted by PILF for their monitoring efforts, the court is satisfied that the fee

request for such efforts is reasonable.[6]

### B.    Contempt Motion

Plaintiffs' counsel seeks a total of $125,642 for 348.60 hours spent litigating the motion for contempt (187.30 hours by the McMannis firm and 161.30 hours by PILF). The fees sought for the hours incurred are based on a lodestar calculation. The County argues that the reported total time incurred for the contempt motion is unreasonably excessive because it was undisputed that the County was technically in violation of the provision of the Consent Decree requiring there to be law libraries and the County had closed such libraries. Further, the County argues, it did not oppose the contempt motion on grounds that it was not technically in violation, but that it had acted in good faith in implementing the LRA program. In particular, the County submits that plaintiffs' 46.3 hours spent interviewing inmates between June 2004 and September 2004 were unnecessary as PILF was already well informed through its monitoring activities of the status of the County's prison law libraries and has the requisite evidence to proceed with a contempt motion. For the same reasons, the County submits that the 15 hours spent in July and September 2004 preparing declarations of inmates were unnecessary for the contempt motion.

In addition, the County points out that although plaintiffs' brief supporting their contempt motion was only eight pages in length and included only seven citations, the McManis firm seeks fees for 61.7 hours for time spent researching and preparing the motion from July 12, 2004 to August 12, 2004. Further, although the County did not contest in opposition that it had violated the consent decree by substituting the LRA program for prison law libraries, the McManis firm seeks fees for 48.4 hours related to research and preparation of a ten page reply brief. The County takes issue with the fact that four attorneys from PILF and the McManis firm appeared at the hearing on the contempt motion. Finally, the County argues that plaintiffs' counsel claim for 45.5 hours incurred *after* the hearing date on the contempt motion and fees for a total of 140 hours spent by the attorneys conferring amongst themselves on strategy and talking points from June 2004 to November 19, 2004 is excessive. The court agrees that the total fees requested by counsel for

---

[6]    Plaintiffs' counsel do not dispute that the PLRA rate applies to the fee request for monitoring efforts.

bringing the County's violation to the court's attention is somewhat excessive for the reasons discussed below.

First, as a general matter, a "district court . . . should exclude from [a] fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citing S. Rep. No. 94-1011, p. 6 (1976)). Fee requests for "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Id.* ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (citation omitted).

Second, central to the court's inquiry as to whether the requested fees are reasonable or reasonably expended is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* As the *Hensley* Court observed, if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. In particular, "Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Id.* Rather, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.

Here, the court's August 30, 2006 Order permitting plaintiffs to move for reasonable attorney's fees for bringing the County's violation of the decree to the court's attention explicitly cautioned plaintiffs that the request must reflect their limited success in the matter and the fact that the prisoners' errors and oversights resulted in more fees being incurred than necessary:

> The court will, however, permit the prisoners to move for reasonable attorneys' fees. However, the court does so with the admonition that the prisoners' request must reflect (1) their limited success in this matter and (2) the fact that the prisoners' occasional oversights and inadvertent errors have consumed greater legal resources than might otherwise have been necessary. *See* November 14 Order at 44:3-44:25 (noting that the prisoners counted all infractions, even ones where the inmate admitted the charge against him, as indicative of whether the County had complied with *Wolff*'s twenty-four hour notice requirement); Harris Decl. ¶¶ 5-6 (noting that the prisoners' seventy-five percent non-compliance estimate on *Wolff*'s written statement requirement failed to (1) include approximately one hundred records, (2) exclude inmates who did not fall under *Wolff*, and (3) exclude records that pertained

to hearings in which the panel found the inmate not guilty).

Aug. 30, 2006 Order at 8:4-13. Although the court recognized that plaintiffs were correct in pointing out that the County was not in compliance with the Access to Courts Decree, the court ultimately concluded that the Access to Courts Decree should be terminated and found that the prisoners' proposed contempt remedy was not appropriate.

In light of the court's prior admonitions, plaintiffs' request of fees for 348.60 hours over an approximately five month period to prepare and argue the contempt motion is excessive. It does not appear counsel made a sufficient attempt to adjust their time records to reflect the court's admonitions. *See* Pls.' Mot. at 16:7-8 ("Plaintiffs are entitled to full compensation at market rates for the time that they spent litigating their successful motion for contempt."). Moreover, as the County points out, plaintiffs became aware of the County's potential non-compliance after an inmate contacted PILF. PILF monitored the County for compliance over the next two years. Plaintiffs admit that as of July 1, 2003, after PILF was informed that the County had closed the law libraries mandated by the Access to Courts Decree, the County was in contempt. *See* Zahradka Decl., ¶ 15 ("On July 1, 2003, PILF was informed that the County had closed the law libraries mandated by the *Batchelder* consent decree, removing any doubt that the County was in contempt of this Court's order (specifically, the Access to Courts decree")). Thereafter, PILF tried to resolve its differences with the County and, when those efforts were unsuccessful, filed the application for an order to show cause for contempt on August 12, 2004. *Id.* ¶ 16. The County did not dispute that it substituted the LRA program for prison law libraries in contravention of the terms of the Access to Courts Decree. Therefore, the time spent interviewing inmates and preparing declarations for the contempt motion was, to some extent, not necessary. Accordingly, the court concludes that plaintiffs' total requested hours should be reduced by 25% to reflect the above-noted considerations. *See Hensley*, 461 U.S. at 436-37 (holding that a district court may, in its discretion, reduce the award to account for the limited success after taking into considerations the factors warranting reduction of a fee request).

### C. Opposition to County's Motion as to Written Statement Requirement

Plaintiffs seek $80,985 for a total of 215.60 hours expended opposing the County's motion to

1 terminate the Amended Disciplinary Procedures Decree on the one issue of whether the County
2 failed to comply with the written statement clause of the Amended Disciplinary Procedures Decree
3 (176.1 hours by the McManis firm and 39.5 hours by PILF). Plaintiffs contend that they prevailed
4 on this issue. The County argues that plaintiffs' request is excessive. The County first notes that
5 plaintiffs' time records in support of this portion of their fee request reflect hours incurred *after* this
6 court's November 14, 2005 order terminating the Amended Disciplinary Procedures Decree except
7 as to the County's obligation to provide a written statement of decision. *See* Nov. 14, 2005 Order at
8 2. As to that obligation, the court specifically could not determine whether it remained necessary.
9 As a result, the court ordered the parties to meet and confer and to submit a proposal as to whether a
10 continuing decree was necessary. Further, the court requested the parties to submit a proposed
11 contempt remedy. *Id.* After considering the additional papers submitted by the parties, the court
12 held that the County failed to carry its burden of demonstrating that the court should terminate the
13 Amended Disciplinary Procedures Decree's written statement requirement. However, the court also
14 chose not to the order relief proposed by plaintiffs, which the court noted exceeded the constitutional
15 minimum, and ordered that the County could move to terminate the Decree in one year. Based on
16 the court's conclusions, the County argues that plaintiffs achieved no success in their efforts
17 undertaken after the November 14, 2005 Order.

18       The court agrees that in light of the court's ultimate ruling plaintiffs did not completely
19 prevail on the issue as to the written findings requirement. However, the court does not agree with
20 the County's contention that plaintiffs achieved no success in their efforts undertaken after the
21 November 14, 2005 Order. Although the court concluded that plaintiffs' methodologies were flawed
22 and that their proposed remedy was not reasonable, the court ultimately denied the County's motion
23 to fully terminate the Amended Disciplinary Procedures Decree. As such, plaintiffs obtained limited
24 relief for their efforts. Notably, the court was not able to determine whether to terminate the Decree
25 without supplemental briefing by the parties and ordered the parties to submit proposals. That the
26 parties submitted "hundreds of hearing records and competing proposed methods" may have been
27 somewhat excessive. Further, to some extent, the need for the parties to litigate stemmed from the
28 parties inability to agree on a mutually acceptable resolution. As the court noted, plaintiffs'

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS—No.
C-71-02017 RMW
SPT                                           13

1  proposed remedies exceeded the constitutional minimum and certain of their arguments were based
2  on flawed methodologies and, therefore, their success was limited.  In light of these considerations,
3  which were highlighted in the court's August 30, 2006 order, the court reduces plaintiffs' fee request
4  for their time expended opposing the motion to terminate the written findings requirement by 25%.

### D.  Additional Hours Incurred Opposing County's Motion to Terminate

In addition, plaintiffs request 1/3 of the total 164.40 hours spent opposing the County's motion to terminate the Disciplinary Decree, but which cannot be allocated to a specific issue. The County does not take issue with this request. Plaintiffs contend that 1/3 of these fees should be paid because the motion to terminate implicated three issues, one of which was the issue of whether the prisoners had a right to a written statement by the factfinders. As noted earlier, the court concluded that there was an ongoing violation by the County of this issue. Based upon a review of the time entries submitted by counsel in support of this category of fees, the court finds the estimated allocation reasonable. Therefore, plaintiffs are entitled to compensation for 1/3 of the hours in this category, after reducing such total hours by 25% for the reasons stated in section C above.

### E.  Fees for General Litigation Work

Plaintiffs also requests fees for services rendered that cannot be allocated to a specific issue because they were either related to both decrees or the litigation in general. The hours for these services total 1,621.40, with 1,093.5 hours incurred by the McManis firm and 527.9 hours incurred by PILF between January 20, 2004 to March 12, 2007. Plaintiffs seek 1/6 of this time, or 270.23 hours. This request seems reasonable but is reduced by 25% to 202.67 hours for the reasons set forth in sections C and D above.

### F.  Fees for Preparing Fee Motion

Finally, plaintiffs request fees for a total of 130 hours spent preparing the present motion for fees (63.40 by the McManis firm and 66.6 by PILF). The County argues that plaintiffs' request for fees for preparing their fee motion should be denied because plaintiffs failed to meaningfully meet and confer with the County prior to filing their motion. Specifically, the County notes that plaintiffs' only attempt to meet and confer was a faxed letter to the County two days prior to plaintiffs' filing of their motion. Additionally, according to plaintiffs' time records, almost all of the time plaintiffs

1 incurred for preparing their motion occurred prior to plaintiffs' attempt to meet and confer with the
2 County.
3     As a general rule, time spent by counsel in preparing a fee motion is compensable.  *See Davis*
4 *v. City and County of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) ("This Court has
5 repeatedly held that time spent by counsel in establishing the right to a fee award is compensable.").
6 Nevertheless, the district court may reduce the fee request for hours not reasonably expended, based
7 on the results obtained in the litigation, or some other relevant consideration.  *See D'Emanuele v.*
8 *Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1386-87 (9th Cir. 1990).  Here, the considerations
9 relevant to this court's inquiry include (1) plaintiffs' limited success in the underlying substantive
10 issues, as noted in the August 30, 2006 Order and above, (2) the fact that the court had already
11 granted plaintiffs a right to reasonable attorney's fees subject to the admonitions set forth in the
12 August 30, 2006 Order, (3) the breadth of fees sought by plaintiffs despite the court's prior
13 admonitions regarding what fees could be requested, and (4) plaintiffs' failure to meaningfully meet
14 and confer with the County prior to preparing their motion for fees.  Plaintiffs' failure to fully
15 address the limitations this court placed on a fee request and to meaningfully meet and confer
16 warrants a reduction of their requested fees for hours unreasonably expended on this motion.  *See*
17 *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major
18 litigation.  Ideally, of course, litigants will settle the amount of a fee.").  Further, plaintiffs' motion
19 for fees devotes substantial argument to using the lodestar method rather than the PLRA rate, which
20 applies based on Ninth Circuit precedent.  *See* § II.A above.  Moreover, a review of plaintiffs'
21 submitted time records indicates that substantial time was spent "cleaning up" time records and
22 holding discussions of fee issues between the two law firms.
23     In light of these considerations, the court concludes that plaintiffs' fee request includes hours
24 which should not have been included and a reduction of plaintiffs' request by 25% is warranted.
25     **G.    Costs**
26     Plaintiffs seek costs of $18,076.03 incurred by the McManis firm.  Counsel has submitted
27 invoices supporting expenses for deposition and limited discovery totaling $7,652.48.  The
28 remaining $10,423.56 of requested cost reimbursement is derived by taking 1/6 of all expenses

**United States District Court**
For the Northern District of California

incurred by McManis for this action between July 14, 2004 to March 22, 2007. McManis represents that the costs incurred relate to work done opposing the County's motion to terminate. Counsel seeks 1/6 of these costs on the basis that the motion addressed two Consent Decrees and the written statement issue was one of three sub-issues relating to the motion to terminate the Disciplinary Procedures Decree. According to the submitted itemization of costs for that period, the expenses incurred consist primarily of photocopying, travel, courier, and facsimile charges. *See* McManis Decl., Ex. A. The County argues that plaintiffs' cost bill is late pursuant to Civil Local Rule 54-1(c) since the parties stipulated to extend the time for the fee motion, but not for the cost bill. The County also argues that the Local Rules disallow costs of reproducing copies of motions, pleadings, notices, and other routine case papers. However, the County does not point to any particular cost item or amount that should be disallowed. The court finds plaintiffs' request for costs reasonable.

### III. ORDER

For the foregoing reasons, the court GRANTS in part and DENIES in part plaintiffs' motion for attorney's fees and costs. Plaintiffs are entitled to fees and costs as follows:

| Category | Requested | Adjusted | Rate | Granted |
|---|---|---|---|---|
| Monitoring | 48.60 | 48.60 | 170 | $ 8,262.00 |
| Contempt Motion/Raising Issue of Non-Compliance | 348.60 | 261.45 | 170 | 44,446.50 |
| Opposition to Motion to Terminate | 215.60 | 161.70 | 170 | 27,489.00 |
| General Opposition | 54.80 | 41.10 | 170 | 6,987.00 |
| General Case Work | 270.23 | 202.67 | 170 | 34,454.33 |
| Fees Motion | 130.00 | 97.50 | 170 | 16,575.00 |
| Total Fees | | | | $ 138,213.83 |
| Costs | $ 18,076.03 | 18,076.03 | | $ 18,076.03 |

DATED:     8/22/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS—No. C-71-02017 RMW
SPT                                                                      16

**A copy of this order was mailed on _____ to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| James Zahradka | jamesz@lawfoundation.org |
| Tara Kaushik | tkaushik@mfmlaw.com |
| Kyra A. Kazantzis | kyrak@lawfoundation.org |
| James H. McManis | jmcmanis@mfmlaw.com |
| Michael Gannon Reedy | mreedy@mfmlaw.com |

Robert A. Baines
330 N Market St
San Jose, CA 95110

Douglas J. Sorenson
Romines Wolpman Tooby Eichner & Sorensen
1263 El Camino Real
Menlo Park, CA 94025

Eric Wayne Wright
Attorney at Law
19910 Wright Drive
Los Gatos, CA 95033

**Counsel for Defendant(s):**

| | |
|---|---|
| Stephen H. Schmid | stephen.schmid@cco.co.santa-clara.ca.us |
| Mary Beth Uitti | mary.beth.uitti@usdoj.gov |

Brian L. Carr
Santa Clara County Counsel's Office
70 W Hedding St 9th Floor, East Wing
San Jose, CA 95110-1770

Michael J. Haungs
Department of Justice--Civil Division
901 E Street, NW, Room 986
Washington, DC 20530

Ann Miller Ravel
County Counsel
70 West Hedding Street
San Jose, CA 95110

John Schumann
US Dept of Justice
Civil Div Fed Programs Branch
901 E St N W, Room 864
Washington, DC 20530

Counsel are responsible for distributing copies of this order to co-counsel, as necessary.

**Dated:** 8/22/07                                    SPT
                                                     **Chambers of Judge Whyte**

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS—No. C-71-02017 RMW
SPT                                                            17